IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDWARD EMMETT CORKER,

    **Plaintiff,**

vs.                                                        **Cause No. 1:10-cv-1064 BB/WDS**

JOHN HARRIS, Deputy Warden,
Valencia County Detention Center,

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on two *Martinez* reports filed by Defendant John Harris. [Docs. 36, 48.] The Court recommends: (1) Plaintiff's law library claim be dismissed with prejudice; (2) Plaintiff's claim for denial of access to his inmate account be dismissed with prejudice; and (3) Plaintiff's retaliation claim be permitted to proceed to discovery.

### I.    BACKGROUND

Plaintiff Edward Corker is a *pro se* litigant proceeding *in forma pauperis*. He filed this 42 U.S.C. § 1983 civil rights action while he was incarcerated at the Valencia County Detention Center (VCDC). Plaintiff's original pleading asserted claims against two defendants, Warden Joe Chavez and Case Manager Barbara Smith. [Doc. 1 at 3.] The

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

claims against these two original defendants have been dismissed. [Doc. 25, 38.]

After he filed his original complaint, Plaintiff was permitted to add defendant Deputy Warden John Harris. [Docs. 11, 15.] The only claims remaining in this lawsuit are the following three claims against Defendant Harris: (1) inadequate law library at VCDC and denial of access to legal materials; (2) denial of Plaintiff's request for a money order drawn from his inmate account; and (3) removal from "honor dorm" in retaliation for filing this lawsuit. The first claim is addressed in Defendant John Harris's *Martinez* report filed January 13, 2012 [Doc. 36]; the second and third claims are addressed in Defendant John Harris's *Martinez* report filed April 23, 2012 [Doc. 48].

The Court has advised the parties that the *Martinez* reports may be used in deciding whether to grant summary judgment. [Docs. 32, 47.] Plaintiff has responded to both *Martinez* reports and Defendant has filed replies. [Docs. 44, 45, 51, 52.] Defendant Harris asserts qualified immunity and requests the Court "exercise its discretion to enter summary judgment against Plaintiff." [Doc. 36 at 4; Doc. 48 at 8.]

## II.  LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which

2

demonstrate the presence of a genuine issue for trial. Fed.R.Civ.P. 56(c).

For purposes of summary judgment, a *Martinez* report is treated like an affidavit. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). The Court may not rely on a *Martinez* report to resolve disputed questions of fact if the prisoner has presented competing evidence. *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992). On the other hand, an uncontroverted *Martinez* report may serve as the basis for a dismissal. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 n.7 (10th Cir. 2009).

### III.   ANALYSIS

#### A.   Inadequate law library and access to legal materials

The material facts of Plaintiff's law library claim are essentially undisputed. In June 2010, Plaintiff filed a *pro se* petition for writ of habeas corpus in New Mexico state court for the purpose of challenging a detainer lodged against him by the state of Texas. [Doc. 1 at 4.] He claims he informed Warden Chavez that VCDC did not have a law library and that Warden Chavez advised him to submit a written request for the reference materials he needed to pursue his habeas case. [Id. at 4.] Plaintiff submitted a written request and then filed a grievance when he did not receive a response. [Id. at 5, 17–18.] Plaintiff's Case Manager, Barbara Smith, responded to Plaintiff's grievance and advised him that she had faxed his request for legal materials to his attorney, Greg Gaudette, who "hopefully" would get the information for him.[2] [Id. at 5, 14.]

---

[2] The materials Plaintiff requested were: (1) "West's New Mexico Rules Annotated; (2) "State Court Rules"; (3) "Rules and Supplement Procedure for District Courts"; (4) "Shepardizing case citation"; (5) "Cohen and Olsons Legal Research"; (6) "Ballantine's Law Dictionary"; (7) United States

3

Plaintiff alleges that Defendant John Harris participated in the failure to provide legal materials. [Doc. 11 at 2.] In his *Martinez* report, Defendant Harris acknowledges that VCDC does not have a law library. [Doc. 36-1 at 1.] According to Defendant Harris, instead of providing a law library, VCDC enables inmates to communicate with their attorneys, and it assigns a case manager to inform inmates of the available legal resources. [Id. at 1–2.] Defendant also acknowledges that Plaintiff made a request for legal materials, filed a grievance when he did not receive the materials, and that Plaintiff's case manager advised him the request was faxed to attorney Gaudette. [Id. at 2.]

Defendant further states that Plaintiff was found eligible for indigent defense services and counsel was appointed to represent him in an extradition challenge that was opened in Valencia County Magistrate Court in November 2010. [Doc. 36 at 3; Doc. 36-6 at 1–2.] In response, Plaintiff argues that the "attorney appointed to represent Plaintiff in a criminal matter did not automatically mean that the same attorney was readily available or capable of providing legal representation on matters involving allegations of violation of federal civil rights." [Doc. 44 at 2.]

The Court concludes that appointing counsel to represent Plaintiff in his extradition challenge was an adequate alternative to providing a law library or access to legal research materials. "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by

---

Code Annotated; (8) "Federal Supplement"; (9) New Mexico State Constitution; (10) NMRA 5-802 and 5-824. [Doc. 1 at 18.]

providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (emphasis added). The Court rejects the argument that VCDC authorities were required to provide Plaintiff with both appointed counsel to represent him in a direct challenge to extradition, and also a law library to enable him to mount a *pro se* collateral attack to extradition. *See Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995) (holding a state may elect to provide legal assistance to inmates in lieu of maintaining an adequate prison library).

Plaintiff's law library claim fails for the additional reason that the Fourteenth Amendment due process right of access to the courts does not extend beyond "protecting the ability of an inmate to prepare a petition or complaint." *Love v. Summit County*, 776 F.2d 908, 914 (10th Cir. 1985) (quoting *Bounds*, 430 U.S. at 828 & n.17) (quotation marks omitted). In this case, Plaintiff suffered no constitutional harm because he was able to file a *pro se* state habeas petition despite the alleged failure of VCDC to provide a law library or legal research materials. *See Gee v. Shillinger*, 1998 WL 43155, 134 F.3d 382 (10th Cir. Jan. 27, 1998) (unpublished) (affirming dismissal of law library claim where Plaintiff was not preparing initial pleading). The Court therefore concludes Defendant Harris is entitled to judgment on Plaintiff's inadequate law library claim.

**B.     Denial of access to inmate account**

Plaintiff claims that on December 28, 2010, he submitted a request to have a money order drawn from his inmate account to pay the filing fee for this case, and that Defendant Harris denied the request. [Doc. 11 at 2, 5.] Defendant Harris admits Plaintiff submitted an

5

inmate communication form requesting payment of the filing fee and that the request was marked "denied." [Id. at 5; Doc. 46-1 at 2.] According to Defendant, the request was marked "denied" because Plaintiff did not indicate the recipient of the request; however, the request was nevertheless processed and a check to pay the filing fee was issued from Plaintiff's account. [Doc. 46-1 at 2.] Defendant has submitted a list of the activity on Plaintiff's inmate account which shows a withdrawal "per John Harris" on January 4, 2011, of $25.00 "for United States District Court." [Doc. 48-1 at 10.] In response, Plaintiff denies his request failed to identify a recipient, but does not controvert Defendant's claim that a check was issued to pay the filing fee.

The record contradicts Plaintiff's claim that he was denied access to his inmate account. Defendant Harris's *Martinez* report establishes that despite being marked "denied," Plaintiff's request was processed and a check was issued payable to the United States District Court. [Doc. 46-1 at 2.] The Court's own records indicate the Clerk of Court received an initial partial filing fee of $25.00 in this case on January 10, 2011, which is consistent with the withdrawal from Plaintiff's account on January 4, 2011. [Doc. 10.] Accordingly, the Court concludes there is no evidence to support Plaintiff's claim that Defendant Harris denied him access to his inmate account, and Defendant is therefore entitled to judgment on this claim.

### C.    Retaliation for filing a lawsuit

Plaintiff alleges Defendant Harris "went on an aggressive campaign to remove the Plaintiff from the Honor Dorm" in retaliation for filing this civil rights case. [Doc. 11 at 3,

7.] The facts of this claim are outlined in an inmate grievance Plaintiff filed against Harris. [Id. at 7–10.] Plaintiff claims that on January 25, 2011,[3] Detention Officer Smith informed him he was being removed from the Honor Dorm and returned to general population. [Id. at 8.] The explanation the shift supervisor gave Plaintiff was that Plaintiff had lied to a detention officer about having permission to work with maintenance supervisor Mike Tellez. [Id.] Plaintiff denies that he told such a lie, and claims he did in fact have permission to work with Tellez and had worked with him on several occasions throughout the facility. [Id. at 8–9.] Plaintiff alleges he complained to Defendant Harris that the incident was "fabricated and blatant retaliation for my federal civil rights suit." [Id. at 9.]

### 1. Whether Defendant is entitled to qualified immunity at the pleadings stage

Qualified immunity should be resolved at the earliest possible stage of litigation, and the Court is under an obligation to "exercise its discretion in a way that protects the substance of the qualified immunity defense." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 & n.2 (10th Cir. 2008) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998)). The Court therefore first considers whether Defendant is entitled to qualified immunity based on the allegations in the pleadings.

To plead a plausible claim in a case subject to a qualified immunity defense, the plaintiff must allege facts sufficient to show, assuming they are true, that defendant plausibly

---

[3] Although the narrative of Plaintiff's grievance states these events occurred in January 2010, the grievance form states the incident happened in January 2011, and the grievance itself is dated January 26, 2011. [Doc. 11 at 7, 8.] The Court therefore presumes the alleged retaliation occurred in 2011, not 2010.

violated plaintiff's constitutional rights and that those rights were clearly established at the time of the alleged violations. *Robbins*, 519 F.3d at 1249. Plaintiff has met this standard in his pleadings by alleging that Defendant Harris removed him from the "honor dorm" in retaliation for filing a lawsuit. At the time this incident allegedly occurred, it was clearly established that prison officials could not retaliate against an inmate because of the inmate's exercise of his right of access to the courts. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).

Defendant argues that Plaintiff cannot prevail on his retaliation claim because Plaintiff does not have a constitutionally-protected interest in a particular housing classification. This argument fails because retaliation is not permitted "even where the action taken in retaliation would be otherwise permissible." *Smith*, 899 F.2d at 948.

Defendant also argues that the alleged retribution Plaintiff suffered—removal from Honor Dorm—is not sufficiently severe to state a constitutional claim. According to Defendant, Plaintiff must allege he suffered a retaliatory action that would chill a person of ordinary firmness from continuing to engage in the protected activity. The Court disagrees. Defendant's argument invokes the standard generally applicable to free speech claims under the First Amendment. *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). The right of access to the courts arises under Article 4 of the Constitution and the 14th Amendment, as well as under the First Amendment, and implicates due process concerns. *Smith*, 899 F.2d at 947. A prisoner claiming he was subjected to retaliation for filing a lawsuit does not have to

allege, as Defendant claims, a retaliatory action as drastic as out-of-state transfer to a supermax prison.  A retaliation claim can be established by alleging less severe responses such as cell-to-cell transfers and removal from work assignments.  *See, e.g.*, *Smith*, 899 F.2d at 947(citing *Harris v. Fleming*, 839 F.2d 1232, 1236–38 (7th Cir. 1988)).  The Court therefore concludes that Defendant is not entitled qualified immunity on Plaintiff's retaliation claim at this time.

### 2. Whether Defendant is entitled to summary judgment based on his *Martinez* report

The Court next considers whether Defendant's *Martinez* report and affidavit establish that he is entitled to summary judgment on the retaliation claim.  Defendant states in his affidavit that inmates who have demonstrated and maintained good conduct can be assigned to the "Work Pod," sometimes referred to as an "Honor Dorm," to work in areas such as food service, maintenance, laundry and cleaning.  [Doc. 48-1, ¶¶ 17–18, 21.]  Work Pod slots are limited and in demand among inmates.  [Id., ¶ 20.]  Defendant states he will remove an inmate from the Work Pod if the inmate has demonstrated some "impropriety."  [Id., ¶ 22.] Defendant further states:

> In Plaintiff's case, I removed him from the "Work Pod" immediately upon learning that Plaintiff Corker falsely claimed that he had been authorized to participate on a maintenance crew.  The maintenance crew was scheduled to do work outside of the facility.  Upon learning that Plaintiff Corker told a lie to be allowed to go outside with this crew, I considered that he could be an escape risk and removed Plaintiff Corker from the "Work Pod."

[Doc. 48-1, ¶¶ 23–24.]

After he removed Plaintiff from the Work Pod, Defendant states he learned Plaintiff

9

was having "improper communications and possible relations with a non-inmate employee of the VCDC food service staff." [Doc. 48-1, ¶ 26.] Defendant claims this additional information supported his concern that Plaintiff was an escape risk. [Id., ¶ 29.] According to Defendant, the employee was terminated after the improper communications with Plaintiff were discovered because improper communications between employees and inmates pose a security risk for facilitating escapes and contraband. [Id., ¶¶ 27–28.]

The Court concludes that Defendant's affidavit is not an adequate basis upon which to rest summary judgment. It does not provide enough facts to render it sufficiently probative. Defendant claims he received information that Plaintiff lied, but does not identify the source, the nature, or the content of the communication. It is unclear, among other things, how Defendant concluded Plaintiff had lied. Although Plaintiff may not have had permission to work outside the facility, he apparently had permission to participate in privileged work assignments, otherwise he would not have been housed in the honor dorm. Also not disclosed is the identity of the person to whom Plaintiff allegedly lied or the identity of the person who reported the lie to Defendant. The affidavit simply does not provide enough facts for the Court to conclude that Defendant has met his summary judgment burden.

Resolution by affidavit is "particularly inappropriate" where retaliatory motive is at issue. *Smith*, 899 F.3d at 949. Defendant states that at the time he removed Plaintiff from the Work Pod, he "did not know the nature of Plaintiff's claims in federal court." [Doc. 48-1, ¶ 25.] Defendant does not deny, however, that he was aware of the existence of Plaintiff's

10

lawsuit against VCDC. Retaliatory motive is not negated merely because Defendant may have been unaware of the particulars of Plaintiff's claims. Furthermore, evidence that Defendant later received information supporting his concern that Plaintiff was an escape risk is marginally probative at best because Defendant learned the information *after* he took the alleged retaliatory action; it thus has little bearing on his motive at the relevant time.

The Court concludes summary judgment on Plaintiff's retaliation claim would be premature prior to the opportunity for discovery. Plaintiff has alleged a plausible claim of retaliation and the temporal proximity (less than a month) between the time Defendant allegedly became aware of Plaintiff's lawsuit and the time Defendant removed Plaintiff from the Honor Dorm raises an inference of retaliation. *See Smith*, 899 F.3d at 949 (suspicious timing and coincidental transfer of witnesses held sufficient to support an inference of retaliation). Therefore, this claim should proceed to discovery.

## IV.   RECOMMENDATION

The Court recommends: (1) Plaintiff's law library claim be dismissed with prejudice; (2) Plaintiff's claim for denial of access to his inmate account be dismissed with prejudice; and (3) Plaintiff's retaliation claim be permitted to proceed to discovery.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**